## GILLETTE MOTOR TRANSPORT CO. v. WHITFIELD et al.

### No. 14657.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 9, 1945.

Rehearing Denied March 9, 1945.

Hill & Paddock and Massingill & Belew, all of Fort Worth, for appellant.

Buck & Kemble, of Fort Worth, and Jones & Jones, of Marshall, for appellee T. E. Whitfield.

Bullington, Humphrey & Humphrey and Leslie Humphrey, all of Wichita Falls, and Conner & Conner and Earl Conner, Sr., all of Eastland, for appellee Wichita Falls & Southern R. Co.

McDONALD, Chief Justice.

On November 11, 1939, the appellee T. E. Whitfield suffered serious personal injuries in a collision between a truck and a freight train. The truck was owned by appellant Gillette Motor Transport Company, and operated by one of its employees. The train was owned and operated by Wichita Falls & Southern Railroad Company. Whitfield was a brakeman on the train. The manner in which the collision occurred will be described later in this opinion.

Whitfield first brought suit in a district court in Tarrant County, suing only the appellant, which will be referred to hereafter as the transport company. The transport company impleaded Wichita Falls & Southern Railway Company. Whitfield amended his pleadings, so as to seek a recovery against both of the companies named. At about the end of a trial in the district court proof was offered to show that the train was owned and operated, not by Wichita Falls & Southern Railway Company, but by a different corporation, Wichita Falls & Southern Railroad Company. The pleadings of the parties were amended, the latter named company being made a party to the suit. Whitfield recovered judgment for $20,202. On appeal to this court, the judgment of the trial court was reversed and the case was remanded for a new trial. Gillette Motor Transport Company v. Whitfield, Tex.Civ.App., 160 S.W.2d 290.

After the case was remanded, the trial court transferred Whitfield's cause of action against the railroad company to Eastland County on the plea of privilege of the latter. The cross action asserted by the transport company against the railroad company was also transferred to Eastland

County, but the latter order of the trial court was reversed on appeal. Gillette Motor Transport Company v. Wichita Falls & Southern Railroad Company, Tex. Civ.App., 170 S.W.2d 629; Wichita Falls & Southern Railroad Company v. McDonald, Chief Justice, 141 Tex. 555, 174 S.W. 2d 951.

At the time of the last trial, which resulted in the present appeal, Whitfield had amended his pleadings so as to seek a recovery only against the transport company; the transport company sought a recovery over against the railroad company; and the transport company also sought by cross action to recover against Whitfield and the railroad company for the damages done to appellant's truck and the cargo it carried.

The verdict of the jury in the last trial convicted the truck driver of negligence, and absolved both Whitfield and the railroad company of negligence. Judgment was rendered on the verdict in favor of Whitfield against the transport company for $39,753. The transport company has appealed.

Appellant, the transport company, first contends that it was entitled to an instructed verdict, or a judgment non obstante veredicto, because of the following: On March 19, 1941, during the first trial of the case, Whitfield entered into a written agreement with the Wichita Falls & Southern Railway Company and the Wichita Falls & Southern Railroad Company (see our opinion in 160 S.W.2d 290 describing the relation of these two companies). In the opening paragraph of the agreement reference is made to the pendency of the suit, and it is recited that Whitfield and the two railroad companies named "have made this agreement in connection with such cause of action as the Plaintiff may have against either of said railroads arising out of said accident and collision aforesaid." For the recited consideration of $10 paid, and the sum of $100 per month to be paid by said railroad companies to Whitfield from November 1, 1940, to July 1, 1944, the accrued payments to be paid in a lump sum, Whitfield covenanted and agreed that regardless of the outcome of the suit pending he would not, nor should anyone for him or on his behalf, levy or issue execution or other process against said railroad companies in the event judgment should be rendered against them or either of them in said cause or in any other cause which

Whitfield might file against them or either of them for damages arising out of the collision in question. For the same consideration Whitfield agreed to indemnify and hold harmless the said railroad companies to the extent of the amount of any judgment that might be rendered in favor of Whitfield against them, and, quoting from the agreement, "notwithstanding the fact that said cause may continue on trial to final judgment, the First Party agrees that he will never enforce said judgment, if any should be rendered, against Second Parties or either of them and never enforce collection of said judgment. * * *"

At the outset appellant contends that the agreement between Whitfield and the railroad companies operated to release appellant from liability, under the general rule that a release of one joint tort-feasor will release the other joint tort-feasors.

■ There is a distinction between a release and a covenant not to sue. By the great weight of authority, a covenant not to sue one joint tort-feasor, or an instrument that may be construed as such, does not amount to a release, and will not discharge the other joint tort-feasors. 45 Am. Jur., p. 676; 53 C.J., p. 1263; annotation in 124 A.L.R. 1309, and other annotations there cited; Restatement of the Law of Torts, Vol. IV, § 885, p. 460; Robertson v. Trammell, 98 Tex. 364, 83 S.W. 1098; 36 Tex.Jur., Release, § 4, p. 800, and cases there cited. After comparing the agreement found in the present case with those found in many other decided cases, we construe it as an agreement in the nature of a covenant not to sue, rather than as a release. The agreement recites that the case may continue on trial to final judgment, but it is only a judgment against the railroad companies that Whitfield covenants not to enforce. The instrument appears to us to be unambiguous, and despite appellant's argument to the contrary, we consider that its meaning was a question of law to be determined by the court, and that there was no issue as to its meaning which was required to be submitted to the jury.

■ Appellant next charges error in the fact that plaintiff's attorney testified from the witness stand that he had formerly sued both the transport company and the railroad company because he feared that if the railroad company was not in the suit the transport company would attempt to fix blame for the collision on the absent rail-

road company and that the railroad company not being there to defend itself, the jury might conclude that it was responsible rather than the transport company. Immediately after the testimony was offered, plaintiff sought to withdraw it with the request that the court instruct the jury not to consider it. The court granted the request and so instructed the jury. We do not find reversible error in this happening. If there was any error in the admission of the testimony the instruction of the court was sufficient to cure it.

■■ As has been said, Whitfield first sued only the transport company. After Whitfield's suit against the railroad company was transferred to Eastland County, Whitfield amended, suing only the transport company. The transport company, by its Sixth Amended Answer and Cross Action, sought recovery over against the railroad company. In response to this pleading, Whitfield filed a supplemental answer denying the transport company's allegations of negligence on the part of the railroad company. The transport company then filed a motion asking the court to instruct Whitfield not to introduce any testimony inconsistent with his former pleadings which had charged that the railroad company was negligent. The Court overruled the motion.

Appellant contends that Whitfield, having once charged the railroad company with negligence and having collected a large sum of money in settlement of the claim asserted against the railroad company, is now estopped to take the position that the railroad company was not in fact negligent. The contention is based on the rule thus stated in 17 Tex.Jur., p. 134:

"Where a party to a judicial proceeding has once taken or assumed a particular position, he is estopped to adopt a position which is inconsistent therewith if to do so will result in prejudice to his adversary. He will not be permitted to 'blow hot and cold' in his efforts to recover. Again, 'the law estops a person to falsify a judicial act to which he is a party, and from which he has received a benefit.'"

Lengthy discussions of the rules relating to such question may be found in 19 Am. Jur., Estoppel, Sections 72 to 82; and in 31 C.J.S., Estoppel, §§ 117 to 120.

Whitfield's abandoned pleadings did not constitute judicial admissions, although they were admissible as admissions against interest, and might have been used to impeach him if he testified in a manner inconsistent with the allegations contained in the abandoned pleadings. 17 Tex.Jur., pp. 570–572. Nor did they raise an estoppel against him. Nor, do we think, did the settlement he made with the railroad company cut him off from testifying as to the facts and circumstances surrounding the collision, even though such testimony might tend to absolve the railroad company from negligence. The rule invoked by appellant cannot, as a practical matter, be applied to the situation in question. It did not lie within the authority of the trial court to instruct Whitfield to testify other than according to the facts as he believed them to be, nor did it lie within the authority of the trial court to instruct Whitfield to withhold any testimony that tended to show lack of negligence on the part of the railroad company. It was Whitfield's right to offer testimony showing how the collision occurred, and then it became the duty of the jury to answer such issues pertaining to negligence of the parties as might be submitted to them by the court.

Hunt v. Ziegler, Tex.Civ.App., 271 S.W. 936, affirmed by Tex.Com.App., 280 S.W. 546, relied on by appellant, does not support its contention. In the cited case the plaintiff sought to avoid the effect of a release (as distinguished from a covenant not to sue) of one of the tort-feasors by claiming that the party released was not in fact a tort-feasor. The court held that he was estopped to do so. We would have the same case here if Whitfield had sought to avoid the effect of his agreement of settlement by claiming that the railroad company was not in fact a tort-feasor. Whitfield could not seek to avoid the effect of his settlement agreement in this manner, but he was not precluded from showing how the collision occurred, even though his evidence might have persuaded the jury that the collision was not caused by any negligence of the railroad company.

■■ Under its sixth point of error appellant urges the proposition that under the undisputed evidence plaintiff's ability to foresee and prevent the collision was superior to that of the truck driver, and that plaintiff failed to exercise ordinary care to avoid his own injury.

The collision occurred in the city of Ranger, where the main line of the railroad company crosses U. S. Highway 80, at the same crossing involved in the cases of

Wichita Falls & Southern R. Co. v. Anderson, Tex.Civ.App., 144 S.W.2d 441, writ dismissed, correct judgment; and Wichita Falls & Southern R. Co. v. Hesson, Tex. Civ.App., 151 S.W.2d 270. The train was engaged in a switching operation at the time. The engine was pulling several freight cars, and was pushing two cars ahead of the engine. A tank car was immediately in front of the engine. The leading car on the train, in the manner in which it was being operated, was a box car. The train was proceeding in a southerly direction. Whitfield, in the performance of his duties as a brakeman, was riding at the southwest corner of this leading box car, with his feet resting on an iron step a short distance above the ground. The collision occurred after dark. Rain · and mist were falling. As he approached and crossed the highway, Whitfield was waving an electric signal lantern. The truck approached from the west, traveling, according to the evidence, at forty or forty-five miles per hour. The train was traveling at five or six miles per hour. Whitfield first saw the truck when it was some three hundred yards from the crossing, and observed the speed at which it was traveling. He testified that he did not expect the truck to cross ahead of the train, but expected the truck to stop in response to his flagging signal, and did not realize that the truck would not stop until the leading box car was already well across the highway. He then gave an emergency signal to stop the train, but at almost the same moment the truck crashed into the side of the leading box car, derailing it, and killing the truck driver. Whitfield was knocked off the train, and was seriously injured.

In passing upon the above contention that Whitfield was guilty of contributory negligence as a matter of law, we must consider the evidence in the light most favorable to the appellee. So doing, we cannot accept appellant's contention. There was evidence to show that Whitfield was exercising some care while approaching and crossing the highway. We cannot say as a matter of law that Whitfield should reasonably have foreseen that the driver would not see the train and the signal lantern, or that he would fail to stop if he did see them. In McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 447, the Supreme Court quotes with approval the following excerpt from the opinion in

Gulf, C. & S. F. R. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227:

"According to the rule in this court, in order that an act shall be deemed negligent, per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it."

The Supreme Court says in Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, 226:

"The rule is that, if the evidence is conflicting, the jury must decide the conflict; and if the evidence is not conflicting, but reasonable minds might differ as to its effect, still a fact issue is presented."

This court held, in Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683, writ of error refused, where the plaintiff was injured at a railroad crossing, that since the evidence showed that the plaintiff exercised some care for his own safety, the question of the degree of his care was one for the jury to decide.

Appellant pleaded that the engineer, the conductor, and Whitfield, and each of them, discovered the perilous position of the truck in time to have avoided the collision. The allegations are in the usual form employed by a plaintiff to allege discovered peril as a ground for recovery against a defendant. Appellant submitted specially requested issues inquiring whether Whitfield discovered the perilous position of the truck, etc. The court refused to submit appellant's requested issues, but submitted the issue of discovered peril in the following manner.

In the 39th issue he inquired whether the truck was in a position of peril.

The 40th issue reads as follows:

"Do you find from a preponderance of the evidence that either the conductor, the engineer, or Whitfield, or all of them, discovered the perilous position of the truck, and realized that it would not be extricated therefrom in time to have avoided the collision by the exercise of ordinary care in the use of all means at hand consistent with the safety of the train, and those on it?"

The 41st issue called upon the jury to name the party or parties, inquired about in the 40th issue, if any, who discovered the perilous position of the truck.

In its objections to the charge presented to the trial court, and in its brief here, appellant says that the discovered peril issue was a defensive issue, and also that there was no evidence to support an issue as to the discovery of the peril by the engineer or the conductor, and that the issue should have inquired only whether Whitfield discovered the peril. It says that the manner of submission employed by the court was confusing, and was not a specific submission of appellant's theory of defense in this respect.

First, we doubt whether the discovered peril issues, either as submitted by the court or as requested by appellant, were sufficient to present a defense to Whitfield's suit against appellant. These issues inquired, in effect, not whether Whitfield discovered that he was in a position of peril, but whether the truck was in a position of peril. Even though the truck was in a position of peril, it did not necessarily follow that Whitfield was in danger of being hurt. But if we be mistaken in this thought, we find no reversible error in the inclusion of the conductor and the engineer in the issue, because we do not see how the jury could have been misled by the form of the issue. If they had believed that Whitfield discovered the perilous position of the truck in time to have avoided the collision, it would have been a simple matter to write Whitfield's name in the answer to the 41st issue.

■■■■ Appellant also objects to the language of the 40th issue as putting too great a burden upon appellant, in that under the language of the issue appellant had to establish that Whitfield realized that the truck would not be extricated from its position of peril. Appellant says that it was required only to show, and to obtain a finding of the jury, that Whitfield realized that the truck probably, or likely, would not be extricated from its position of peril. Appellant's objection appears to be good, insofar as the discovered peril issue relates to its cross action for the damages done to its truck. But as we have suggested above, it is doubtful whether the issue, either in the form submitted or in the form requested, contained the essential elements which go to, make up a defense of contributory negligence.

Appellant argues that Whitfield should not recover because the evidence shows as a matter of law that Whitfield discovered the perilous position of the truck in time to have avoided the collision. We overrule this contention by saying, for reasons elsewhere given in this opinion, that the evidence is not such as to show Whitfield guilty of contributory negligence as a matter of law.

■■■■ Appellant charged that it was negligence on the part of the railroad to push the two cars ahead of the engine, and requested the submission of an issue to that effect. The court submitted, instead, an issue reading as follows:

"Do you find from a preponderance of the evidence that any, or all, of the employes of the railroad company on the train, engine and cars in question, was or were negligent in moving the·railroad cars ahead of the engine with the lights of the engine and that of Whitfield situated as they were?"

The issue next following required the jury to name such of the employees, if any, as they found to be negligent.

Appellant's first objection to the issue is that appellant's pleadings and the evidence were broad enough to present the question of negligence, in this respect, of persons other than the members of the train crew, in that the evidence showed that trains had been handled in this manner for a long period prior to the time of this collision. Under our view of the evidence, it did not raise an issue of negligence, in this respect, on the part of anyone other than the members of the train crew. They appear to have been in entire charge of the handling of the train, and the manner of assembling the train, on the occasion in question.

■■■■ Appellant also complains of the following language in the issue, "with the lights of the engine and that of Whitfield situated as they were." We doubt if the language quoted amounted to a comment on the weight of the evidence. We would not reverse the judgment on this point of error, but in view of another trial we do suggest that the issue would be clearer if the words just quoted were omitted. If there is any question of negligence concerning the lights on the train it should be submitted in other issues.

■■■■ Appellant pleaded, in effect, that Whitfield was negligent in not signaling the engineer to stop, or in the alternative, to slow down, in time for the engineer to stop the train or slow down before the

collision occurred, and requested issues submitting such defense. The court submitted, instead, an issue reading as follows:

"Do you find from a preponderance of the evidence that the plaintiff, T. E. Whitfield, failed to give the engineer of the train a slow down or stop signal immediately before the collision?"

There is evidence tending to show that Whitfield saw the truck when the train was about one hundred feet north of the highway. The truck was about three hundred yards west of the crossing, and approaching it at a speed of forty or forty-five miles per hour. Whitfield did not think that the truck could pass ahead of the train, but testified that he thought, until it was too late to avoid the collision, that the truck would obey Whitfield's flagging signal and stop. Whitfield was familiar with the crossing, and had traveled over it many times. We think it was a jury question whether Whitfield was negligent in not signaling the engineer to stop when he saw the truck approaching the crossing at a high rate of speed. Whitfield owed the duty of exercising ordinary care to avoid the collision, even though the truck was being negligently driven toward the crossing. The issue submitted by the court is defective for two reasons. First, the issue had to be answered in the negative if the jury believed that Whitfield gave either a slow down or a stop signal. He testified that he gave a stop signal. The jury therefore could not pass on the question of his negligence in failing to give a slow down signal. Second, under the particular facts of this case, the issue submitted does not contain the time element which is vital to the defense pleaded by appellant, to-wit, that Whitfield should have given the engineer a signal soon enough to have permitted the engineer to slow down or stop before the collision occurred. Whitfield gave an emergency stop signal immediately before the collision. But it was then too late to avoid the collision. The jury could have believed, under the evidence, that Whitfield should reasonably have foreseen the collision sooner than the time he gave what he called the washout signal. The defense pleaded by appellant, and that presented in its requested issue, went to the heart of the question of Whitfield's conduct from and after the time he discovered the approach of appellant's truck. It was error to submit the issue in the form employed by the court, and not to submit the question in the manner requested by appellant.

Whitfield argues that the same inquiry was included in the discovered peril issues. We do not think that the discovered peril issue was sufficient to present to the jury the specific defense above discussed. At best the discovered peril issue was an awkward way of submitting contributory negligence, and it did not clearly and specifically submit to the jury the question whether Whitfield was negligent in not signaling the engineer to stop or slow down at a time when the collision could have been avoided. Whitfield testified that the engineer would have obeyed his signals, and that the train could have been stopped within a distance of forty to eighty feet.

In instructing the jury with reference to the damage issue, the court gave the following instruction:

"In arriving at such decrease, if any, in his earning capacity up to July 1, 1944, you will deduct the sum of $4400.00 which will have been paid to plaintiff by the Wichita Falls & Southern Railroad Company by such date."

The amount paid by the railroad company was properly deductible from any judgment that Whitfield might recover against appellant, and the court was in error in charging the jury that it should deduct the amount from Whitfield's decreased earning capacity up to July 1, 1944. Appellant says that the charge amounted to a suggestion by the court to the jury that the damages to be allowed for decreased earning capacity up to July 1, 1944, were in excess of $4400. Upon another trial we suggest that if any instruction is given in regard to the money paid by the railroad company, it be to the effect that such amount is to be deducted from the entire amount of damages found, and we further suggest that any such instruction be worded so as not to imply that the court is of opinion that the jury will find damages in a sum exceeding $4400.

Appellant charges that the verdict is excessive. The verdict is large. In view of the fact that the cause is being remanded on other grounds, we shall not undertake to determine whether the verdict is excessive.

Reversed and remanded.